UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ALEXANDER BAYONNE STROSS, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 20-CV-11341-AK |
| BOSTON WEB POWER LLC, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM AND ORDER ON DEFENDANT BOSTON WEB POWER LLC'S MOTION FOR SUMMARY JUDGMENT

**A. KELLEY, D.J.**

This action is a claim for copyright infringement. Plaintiff Alexander Bayonne Stross ("Plaintiff" or "Stross") is a professional photographer in Austin, Texas who creates and licenses photographs for various uses. Defendant Boston Web Power LLC ("Defendant" or "Boston Web Power") is a website provider located in Woburn, Massachusetts, which runs the website www.wanjiaweb.com, a bulletin board-type community website that lists content and articles posted by Chinese-speaking Bostonians.

On July 16, 2020, Stross filed this action against Boston Web Power for reproducing, distributing, and publicly displaying twelve photos without Stross' authorization on www.wanjiaweb.com. Plaintiff alleges Defendant violated the Copyright Act, 17 USC § 101 *et seq.* and the Digital Millennium Copyright Act, 17 U.S.C. § 1202. After District Judge Douglas Woodlock denied the Defendant's Motion to Dismiss [Dkt. 14], Plaintiff's Motion for Partial Summary Judgment [Dkt. 15], and Defendant's Cross-Motion for Summary Judgment [Dkt. 22], at the direction of the Court, Defendant filed a new Motion for Summary Judgment [Dkt. 35].

1

For the following reasons, Boston Web Power's Motion for Summary Judgment [Dkt. 35] is **DENIED**.

I.     **BACKGROUND**

In evaluating a motion for summary judgment, the factual background is typically drawn from the parties' statements of material facts. Stross did not submit a statement of material facts when filing his Opposition to Defendant's Motion for Summary Judgment. As a result, the following facts are solely drawn from Boston Web Power's Statement of Material Facts included in its Motion for Summary Judgment [Dkt. 36], Stross' Response to those facts [Dkt. 39] and Opposition to Defendant's Second Motion for Summary Judgment [Dkt. 37], as well as any attached exhibits the parties have submitted. The Court accepts as true each alleged material fact to the extent it has not been disputed by the opposing party and considers contested each material fact that one or both parties has disputed.

The 12 photographs at issue (the "12 Photos" or the "Copyrighted Works") are part of a photo shoot Alexander Stross completed on November 11, 2011, of small housing units near the Llano River in Texas (the "Tiny House Project") designed by the architect Matt Garcia. [Dkt. 39 ¶ 1; Dkt. 20 ¶ 4]. Plaintiff owns the copyrights to each of the photos: he obtained a certificate of registration for those photos from the United States Copyright Office, Reg. No. VAu 1-089-810. [Dkts. 38; 37 at 4].

ImageRights International, a company Plaintiff uses to monitor his copyrights of online infringements [Dkt. 16 at 2], found one article on www.wanjiaweb.com containing the 12 Photos. [Dkt. 36 at 8]. ImageRights International sent Boston Web Power two emails on April 21, 2019, and April 23, 2019, notifying Defendant of copyright infringement. Boston Web Power alleges that it never received those emails. [Dkt. 36 at 4]. Xiaoyan Huang, President of

Boston Web Power, acknowledges receipt of an email on May 26, 2020, from Joseph Naylor of ImageRights International regarding the 12 Photos. He subsequently immediately deleted the entire section called "Good Articles," which included the article with the Copyrighted Works. [Dkts. 36 at 8; 39-2 at 4-5]. Defendant alleges that the 12 Photos were posted in an article, through hyperlinks, posted by a third-party user [Dkt. 36 at 8]. Boston Power Web was unaware that the photos had been posted on www.wanjiaweb.com. [Dkts. 37-3 at 9; 39-2 ¶ 15]. After ImageRights International failed to obtain a $24,000 license fee from Defendant for the images [Dkt. 39-2 ¶ 15], Stross filed this action on July 16, 2020, alleging copyright infringement in violation of the Copyright Act and the Digital Millennium Copyright Act. [Dkt. 1]. Boston Web Power has moved for summary judgment [Dkt. 35], and Stross opposes Defendant's motion. [Dkt. 37].

## II.   LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (citing Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment may be granted when the record, viewed in the light most favorable to the non-moving party, presents no "genuine dispute as to any material fact and the mov[ing party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must consider (1) whether a factual dispute exists; (2) whether the factual dispute is "genuine," such that a "reasonable fact-finder could return a verdict for the nonmoving party on the basis of the evidence"; and (3) whether a fact genuinely in dispute is material, such that it "might affect the outcome of the suit under the applicable substantive law." Scott v. Sulzer Carbomedics, Inc., 141 F. Supp. 2d 154, 170 (D. Mass. 2001); see also Napier v. F/V DEESIE, Inc., 454 F.3d 61, 66

(1st Cir. 2006).  A non-moving party may "defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." Paul v. Murphy, 948 F.3d 42, 49 (1st Cir. 2020) (citation omitted).  However, "the non-moving party may not simply 'rest upon mere allegations or denials of his pleading,' but instead must 'present affirmative evidence.'"  Adler v. Her Campus Media, LLC, 11 F. Supp. 3d 121, 126 (D. Mass. 2019) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986).

To establish copyright infringement under the Copyright Act, a plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).

### III.   DISCUSSION

It is undisputed that Stross owns a valid copyright in the 12 Photos, as he holds a certificate of registration issued by the U.S. Copyright Office for each photograph.  [Dkt. 38]. See Johnson v. Gordon, 409 F.3d 12, 17 (1st Cir. 2005) ("A certificate of copyright constitutes prima facie evidence of ownership and originality of the work as a whole.").  Defendant moves for summary judgment on the basis that (1) the architect Matt Garcia ("Garcia") has an implied license to make derivative works and thus Plaintiff lacks exclusive rights to the 12 Photos; (2) there is no evidence that Defendant copied Plaintiff's photos; (3) Defendant's use is exempted under 17 U.S.C. § 113(c); (4) statutory damages are unavailable for derivative works; (5) the Defendant's use of the 12 Photos is de minimis; (6) the statute of limitations bars relief to Plaintiff's claims; and (7) there is a fair use defense for Defendant's use of the photographs. [Dkt. 36 at 2].  The Court will address each of these in turn.

### A. Matt Garcia Does Not Have an Implied License

Boston Web Power first alleges that Stross traded seven photographs of the Tiny House Project in exchange for $12,500 to $15,000 of Garcia's work, which consisted of providing design work on a property at 616 Oakland Ave in Austin, Texas. [Dkts. 36 at 11-12; 36-9 at 7-8]. Defendant alleges that this trade constitutes an implied license for seven photographs of the Tiny House Project. [Dkt. 36 at 12].

A nonexclusive license to use a copyrighted work—where ownership of the copyright is not transferred—"may be implied from conduct which indicates the owner's intent to allow a licensee to use the work." John G. Danielson, Inc. v. Winchester-Conant Props., Inc., 322 F.3d 26, 40 (1st Cir. 2003). The three-part test to determine whether an implied license exists "requires that the licensee request the creation of the work, the licensor create and deliver the work, and the licensor intend that the licensee distribute the work." Id. at 41. Some courts quickly pass over the "request" and "delivery" elements. Photographic Illustrators Corp. v. Orgill, Inc., 953 F.3d 56, 61 (1st Cir. 2020) (citations omitted). The First Circuit has emphasized, however, that "the touchstone for finding an implied license . . . is intent." Est. of Hevia v. Portrio Corp., 602 F.3d 34, 41 (1st Cir. 2010) (citations omitted). In determining intent, the First Circuit considers the following:

> "(1) whether the parties were engaged in a short-term discrete transaction as opposed to an ongoing relationship; (2) whether the creator utilized written contracts . . . providing that copyrighted materials could only be used with the creator's future involvement or express permission; and (3) whether the creator's conduct during the creation or delivery of the copyrighted material indicated that use of the material without the creator's involvement or consent was permissible."

Comerica Bank & Tr., N.A. v. Habib, 433 F. Supp. 3d 79, 100 (D. Mass. 2020) (quoting Danielson, 322 F.3d at 41).

None of the facts here support Defendant's argument that an implied license exists. The evidence in the record does not suggest there is an ongoing working relationship between Garcia and Stross beyond the Tiny House Project, does not establish whether there was a written contract, does not set out any license terms, and does not demonstrate an intent from Garcia or Stross to enter into a contract. In sum, there is nothing to suggest Stross intended for Garcia to distribute any of the Copyrighted Works.

Defendant also argues that the implied license authorized Garcia to take derivative photos of the seven photos he traded from Stross "and to distribute those derivative photos to any news organizations who reported his designed new home style." [Dkt. 36 at 12]. Based on this, Boston Web Power jumps to the conclusion that Garcia subsequently did in fact create derivative photos and "distributed his derivative works to many news organizations." [Id. at 14]. In support of this assertion, Boston Web Power points to six articles about Garcia and the Tiny House Project. [Dkts. 36-2–36-8]. The existence of articles with photos of the Tiny House Project does not establish that Garcia created derivative works of the seven photos he received from Stross. Defendant has not even established with affirmative evidence what those seven photos look like; it cannot then assert Garcia created derivative works or that the photos in the articles presented are those alleged derivative works. In fact, three of the six articles attribute all of the photographs to Stross [Dkts. 36-2 at 18; 36-3 at 8; 36-6 at 6], and a fourth article attributes the photos to Misty Keasler [Dkt. 36-7 at 3-6]. The photos in one of the remaining articles do not have a copyright mark or give credit to an individual.[1] [Dkt. 36-4]. This does not establish Garcia took the photographs in those articles. Again, there is no evidence that Garcia made

---

[1] The other article only provides a link to a photo slideshow, which no longer works. [Dkt. 36-5 at 3].

derivative works, Stross intended for Garcia to distribute any derivative or copyrighted works, or that Garcia did so.

An implied license is an affirmative defense to copyright infringement. Photographic Illustrators Corp., 953 F.3d at 64. Therefore, "summary judgment is warranted only if [the defendant] has provided 'conclusive' evidence proving the license." Id. at 65 (citations omitted). Boston Web Power has not provided conclusive evidence; thus, its implied license argument fails. The existence of an implied license is a genuine issue of material fact to be resolved at trial.

**B. Copying**

    **a. Actual Copying**

Once a plaintiff has proven ownership of a valid copyright, they must then establish the defendant copied constituent elements of the work that are original. Feist Publ'ns, 499 U.S. at 361. Establishing the second element of the *Feist* test first requires that the plaintiff "factually establish, whether via direct or circumstantial evidence, that the alleged infringer copied the protected work." Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory, 689 F.3d 29, 48 (1st Cir. 2012). Finding direct evidence to prove actual copying is difficult. Id. at 49. "For this reason, parties typically rely on circumstantial evidence to prove that the defendant had access to the protected work and that the resulting product, when fairly compared to the original, was sufficiently similar that actual copying may properly be inferred." Id.

Plaintiff points both to direct and circumstantial evidence of copying, sufficient to create a material issue of fact for a jury. [Dkt. 37 at 12-13]. For direct evidence, Stross points to Defendant's responses to Plaintiff's first set of interrogatories. [Dkt. 37-1]. Boston Web Power conceded in one of its responses that the Copyrighted Works were posted on

www.wanjiaweb.com, and that upon receipt of an email from Joseph Naylor of ImageRights International on May 26, 2020, Boston Web Power promptly deleted the entire section where the article containing the 12 Photos was located. [Id. at 9].

To establish circumstantial evidence of copying, courts apply the "probative similarity" standard by looking to whether the alleged infringer had access to the copyrighted work and that "a sufficient degree of similarity exists between the copyrighted work and the allegedly infringing work to give rise to an inference of actual copying." Johnson, 409 F.3d at 18.  As Boston Web Power concedes, the Copyrighted Works "were widely published" on the Internet [Dkt. 36 at 6], which would have made them easily accessible to anyone interested in them. Moreover, a comparison of the Copyrighted Works with the photos reproduced on www.wanjiaweb.com easily establishes "probative similarity;" the photographs are extremely similar to one another, with the most significant difference being the cropping in the photos on Defendant's website.

      b.  **Substantial Similarity**

Part of establishing the second *Feist* element, a plaintiff must also show "that the copying of copyrighted material was so extensive that it rendered the offending and copyrighted works substantially similar." Lotus Dev. Corp. v. Borland Int'l Inc., 49 F.3d 807, 813 (1st Cir. 1995).

In determining whether there is substantial similarity between two works, the "ordinary observer" test applies.  Concrete Mach. Co. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 607 (1st Cir.1988).  Under this standard, two works are considered substantially similar "if a reasonable ordinary observer, on examining both, 'would be disposed to overlook [the disparities between the works] and regard their aesthetic appeal as the same.'"  Soc'y of Holy Transfiguration Monastery, 689 F.3d at 50 (quoting Concrete Machinery, 843 F.2d at 607).  To

evaluate substantial similarity, the First Circuit "dissects" a copyrighted work to determine which aspects of the work are protected by copyright and which ones are not. See Yankee Candle Co. v. Bridgewater Candle Co., LLC, 259 F.3d 25, 34 (1st Cir. 2001) (dissecting Yankee candle labels to determine which aspects of the works are protected under copyright law); Soc'y of Holy Transfiguration Monastery, 689 F.3d at 50 (explaining that the substantial similarity analysis requires dissecting the copyrighted work and separating its original expressive elements from its unprotected content).

      The copyrighted works are expressive representations of the Tiny House Project. The choices Stross made to generate those specific images are the elements that are protected by his copyright, such as the lighting, shading, timing, angle, and selection of camera, among other variations. See Harney v. Sony Pictures Television, Inc., 704 F.3d 173, 180 (1st Cir. 2013) ("Courts have recognized originality in the photographer's selection of, *inter alia*, lighting, timing, positioning, angle, and focus"); see also Yankee Candle Co. v. Bridgewater Candle Co., Inc., 99 F. Supp. 2d 140, 147 (D. Mass. 2000) (stating that in copyright infringement cases involving photographs, courts are directed to "look for 'identical' or 'verbatim' copies that employ virtually identical uses of lighting, angle, and positioning."). Looking at Plaintiff's 12 Photos and the images that were on Defendant's website side by side [Dkt. 37-2], the use of lighting, focus, positioning and content of subject matter as well as other factors of composition do not appear to be distinctive. The most significant difference is that the photos on Defendant's website were slightly cropped, removing Stross' copyright notice. A reasonable juror could conclude the photos are substantially similar.

### C. Originality and Derivative Works

Boston Web Power next argues that Stross' 12 Photos are derivative works, and thus constitute one work for purposes of statutory damages. [Dkt. 36 at 16]. Photographs of architectural works can be original. "Original, as the term is used in copyright, means only that the work was independently created by the author . . . and that it possesses at least some minimal degree of creativity. . . . [T]he requisite level of creativity is extremely low; even a slight amount will suffice." Feist Publ'ns, 499 U.S. at 345 (citations omitted). Courts have long recognized originality in photographers' conception of their subject and selection of various elements, such as lighting, angle, and timing. Harney, 704 F.3d at 180-81; Rogers v. Koons, 960 F.2d 301, 307 (2d Cir. 1992) ("Elements of originality in a photograph may include posing the subjects, lighting, angle, selection of film and camera . . . and almost any other variant involved."); Schrock v. Learning Curve Int'l, Inc., 586 F.3d 513, 522 (7th Cir. 2009) (concluding that Schrock's photos of Thomas & Friends toys were "highly accurate product photos but contain[ed] minimally sufficient variation in angle, perspective, lighting, and dimension" to be original, copyrightable works). Nevertheless, the Court need not resolve here whether the copyrighted works are derivative or original works. The classification of Stross' 12 Photos does not affect the applicable legal standard for determining copyrightability—it merely determines the scope of copyright protection. See 17 U.S.C. § 103(b) (stating that the copyright in a derivative work only extends to the material contributed by the author of such work). Because there is a genuine issue of material fact whether the Copyrighted Works are derivative or original, the question of post-infringement damages is inappropriate for summary judgment.

### D. The Infringement of Plaintiff's Copyrighted Photographs Is Not *De Minimis*

Defendant's argument that it possibly displayed the Copyrighted Works on its website only a single time and therefore, the amount of copying was de minimis [Dkt. 36 at 17-18], is inapposite. The number of times Defendant displayed the 12 Photos is irrelevant in the de minimis analysis. Rather, the de minimis doctrine pertains to the extent of copying and assessing the strength of a plaintiff's proof of substantial similarity. Situation Mgmt. Sys., Inc. v. ASP. Consulting LLC, 560 F.3d 53, 58-59 (1st Cir. 2009). If such a small portion of the plaintiff's work is copied that the two works are not considered to be substantially similar—i.e., if the copying is de minimis—then there is no copyright infringement. Id. However, "'even if the similar material is quantitatively small, if it is qualitatively important, the trier of fact may properly find substantial similarity.'" Id. at 59 (quoting 2 Nimmer & Nimmer, Nimmer on Copyright, § 13.03[A][2][a], at 13–55).

As the Court previously noted, the photos on Boston Web Power's website are extremely similar to the Copyrighted Works. [See Dkt. 37-2]. Therefore, there is no place for an inquiry as to whether there was de minimis copying. See Situation Mgmt. Sys., 560 F.3d at 59 (where the First Circuit found the de minimis exception inapplicable when infringement had been alleged "through the overall structure and arrangement" of the plaintiff's work).

### E. Defendant's Unpleaded Affirmative Defenses

Boston Web Power also raises three affirmative defenses in its Memorandum in Support of Defendant's Motion for Summary Judgment: 1) its use of the 12 Photos is exempted from copyright infringement under 17 U.S.C. § 113(c) [Dkt. 36 at 15]; 2) the statute of limitations bars relief to Plaintiff's claims [Id. at 18-20]; and 3) Boston Web Power's reproduction of the 12 Photos constitutes fair use [Id. at 20-21]. Defendant failed to raise any of these defenses in its Answer. [See Dkt. 8]. The only affirmative defense Defendant raised in its Answer to the

Complaint was a Digital Millennium Copyright Act defense [Dkt. 8 at 5] that is unasserted in its Motion for Summary Judgment.  [See Dkt. 36].  If an affirmative defense is not pleaded pursuant to Fed. R. Civ. P. 8(c)'s requirements, it is waived.  See Fed. R. Civ. P. 8(c); see also Keefe v. Locs. 805, Int'l Longshoremen's Ass'n, AFL-CIO, No. 04-11340-DPW, 2007 WL 2461045, at *6 (D. Mass. Aug. 23, 2007) (pointing out that "First Circuit decisions consistently hold that failure to plead an affirmative defense generally results in waiver of the defense and its exclusion from the case.").  However, "[a] district court may relax the raise-or-waive rule when equity so dictates and there is no unfair prejudice to any opposing party." Shervin v. Partners Healthcare Sys., Inc., 804 F.3d 23, 52 (1st Cir. 2015).  Here, Plaintiff had no notice that these three affirmative defenses would be raised at trial.  Discovery as to liability concluded April 14, 2021, and Plaintiff did not have the opportunity to obtain evidence that challenges the affirmative defenses.[2]  Moreover, Boston Web Power has not offered a reason for its undue delay that would dictate relaxing the rule.  Allowing Boston Web Power to benefit from these defenses for purposes of the instant motion would cause unfair surprise and prejudice the Plaintiff.  Therefore, the Court deems Defendant's affirmative defenses waived.

### IV.    CONCLUSION

For the foregoing reasons, Boston Web Power's Motion for Summary Judgment [Dkt. 35] is **DENIED**.

**SO ORDERED.**

Dated: September 29, 2023                                              /s/ Angel Kelley
                                                                                           Hon. Angel Kelley
                                                                                           United States District Judge

---

[2] Boston Web Power argues Stross had notice as to its statute of limitations defense because Defendant initially raised this defense in its Cross-Motion for Summary Judgment [Dkt. 22 at 8-10].  However, that motion was not filed until May 19, 2021—over a month after discovery had concluded.  [Dkt. 13].